NEW ENGLAND DRESSED MEAT AND WOOL COMPANY vs.
STANDARD WORSTED COMPANY.

Suffolk.    January 8, 9, 1896. — February 28, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Sale — Passing of Title — Statute of Frauds — Sufficiency of Memorandum —
Evidence.*

In the sale of a portion of a larger mass, the whole remaining in the possession of
the vendor, with a right and power in him to make a separation, no title passes
until that is done, so as to enable him to recover the price in an action for goods
sold.

A memorandum as follows, "Bought of N. Co. about 2000 to 2500 lbs F C and
all they make for thirty days say up to 10,000 to 15,000 lbs at 40 cts. net cash
1% brokerage to me for ⅞ S. Co.," written by the defendant's agent and broker,
is a sufficient memorandum of the contract, within the statute of frauds, Pub.
Sts. c. 78, § 1; and, in an action for the price of the goods, oral evidence is ad-
missible to show the meaning of the letters "F C," and also that the plaintiff, a
manufacturer, had on hand when the contract was made 2,443 pounds of re-
cently manufactured F C wool at his factory, where the parties were at the
time of making the contract.

While oral evidence is not competent to contradict or vary the terms of a memo-
randum of a contract of sale to show what is intended, the situation of the par-
ties and the surrounding circumstances at the time when the contract was made
may be shown to apply the contract to the subject matter.

CONTRACT, to recover the price of 5,014 pounds of "F C
wool," alleged to have been sold by the plaintiff to the defend-
ant. The answer, among other defences, set up the statute of
frauds. At the trial in the Superior Court, before *Mason*, C. J.,
the jury returned a verdict for the plaintiff; and the defendant
alleged exceptions. The facts appear in the opinion.

*G. R. Swasey*, (*J. Nelson* with him,) for the defendant.

*A. P. French*, for the plaintiff.

KNOWLTON, J. The plaintiff seeks to recover only upon the
first and third counts of the amended declaration, which set forth
a claim for the price of goods sold. As the case was submitted
to the jury, a verdict could not be rendered for the plaintiff un-
less it was proved that the title passed to the defendant. The
contract of sale covered certain specific property, namely, the
fine combed wool which the plaintiff had on hand when the
contract was made, and also such fine combed wool as the plain-

tiff should manufacture within the next thirty days, the whole to be paid for at forty cents per pound. The present action concerns only a part of the wool subsequently manufactured, and the principal question in the case is whether the title passed · before the action was brought. The 2,443 pounds of F C wool on hand at the plaintiff's factory, where the parties were at the time of making the contract, became the defendant's property as soon as the contract was made.

What was necessary to give the contract effect upon the wool to be produced so as to change the ownership from the plaintiff to the defendant? The plaintiff was a manufacturer of wool, and it is clear that, of the quantity of wool of different kinds in its possession, none would pass to the defendant until something occurred to designate it as that covered by the contract. The parties contemplated, as their contract shows, that the plaintiff, who was to manufacture the wool, should, in connection with the work of manufacturing it, separate it from the mass of wool then in its possession and determine its weight, so that it would appear to be the property called for by the contract, and its price would be ascertained. A learned writer states the law to be as follows : " In a sale of a portion of a larger mass, the whole remaining in the possession of the vendor, with a right and power in him to make a separation, both upon principle and the weight of authority, no title passes until that is done, so as to enable the vendor to recover the price, even for goods ' bargained and sold.' " Benjamin, Sales, (6th Am. ed.) 308. This doctrine is well established in Massachusetts, and, while the decisions are not uniform, it is a rule which prevails generally in this country, as well as in England. *Scudder* v. *Worster,* 11 Cush. 573. *Weld* v. *Cutler,* 2 Gray, 195. *Middlesex Co.* v. *Osgood,* 4 Gray, 447. *Ropes* v. *Lane,* 9 Allen, 502. *Nichols* v. *Morse,* 100 Mass. 523. *Morse* v. *Sherman,* 106 Mass. 430, 432. *Keeler* v. *Goodwin,* 111 Mass. 490. *Turner* v. *Langdon,* 112 Mass. 265. *The Elgee Cotton cases,* 22 Wall. 180, 187. *Hatch* v. *Oil Co.* 100 U. S. 124, 134. *Morrison* v. *Dingley,* 63 Maine, 553. *Bailey* v. *Smith,* 43 N. H. 141. *Haldeman* v. *Duncan,* 51 Penn. St. 66. *Hahn* v. *Fredericks,* 30 Mich. 223. *Woods* v. *M'Gee,* 7 Ohio, 467. *Browning* v. *Hamilton,* 42 Ala. 484. *Commercial National Bank* v. *Gillette,* 90 Ind. 268. *Ferguson* v. *Northern*

*Bank,* 14 Bush, 555.    *Baldwin* v. *McKay,* 41 Miss. 358.    *Upham* v. *Dodd,* 24 Ark. 545.    *Courtright* v. *Leonard,* 11 Iowa, 32. *McLaughlin* v. *Piatti,* 27 Cal. 451, 463.

We think that this rule is applicable to the present case. The regular process of manufacture which was necessary to bring the property within the contract would leave it a part of the larger mass in the possession of the plaintiff. According to the un-contradicted testimony, as the wool was manufactured it was conducted into bins by a spout, and, in the absence of some special action taken for the purpose, there would be nothing to distinguish the wool made on one day from that made on the next day. The defendant requested the judge to instruct the jury as follows: "In order to recover on either the first, second, or third counts of its amended declaration, the plaintiff must prove exactly 5,014 lbs of F C wool was separated into a body, by itself, not mixed with or a part of any greater quantity of wool of a different grade, or with a greater quantity of F C wool, at the time the defendant was entitled to receive the wool the subject of the contract; in other words, the plaintiff, under the first three counts of the amended declaration, must show that the title to 5,014 lbs of F C wool passed to the defendant, and the title could not so pass until and unless that exact quantity of F. C. wool was made a distinct and separate portion by itself." The judge adopted this instruction, and said he would give it, omitting the words "exactly" and "exact." The instruction was not given in the words in which it was written, and the defendant contends that, considering the whole charge together, it was not given in substance or according to its meaning. We do not deem it necessary to determine the correctness of this contention. The defendant concedes that some parts of the charge correctly stated its position. The fair interpretation of the request is "that the wool subject to the contract," that is, the identical wool manufactured during the thirty days, must have been separated from the other wool of the plaintiff so that it could be identified, in order to entitle the plaintiff to recover. We think the presiding justice intended to present to the jury the question raised by this request, and we also think that there was no evidence in the case to warrant a finding for the plaintiff upon it. As we understand the testi-

mony, which is reported in full in the bill of exceptions, the plaintiff in manufacturing the wool weighed it as it went into the bins, so that the weight of the product of each day was known. The wool produced within the thirty days was weighed in the ordinary course of manufacture, and in that way the plaintiff knows how many pounds are covered by the contract. When the plaintiff undertook to deliver, or to set apart for the defendant the balance of the wool covered by the contract remaining after the previous delivery, it shipped 6,223 pounds, instead of 5,014 pounds, the balance of the amount which was produced within the thirty days. The defendant was not bound to take any wool except that manufactured within the thirty days; and unless the plaintiff, whose duty it was to separate that from its other property, separated it so that it could be identified, the title to it never passed. We find no statement from any witness indicating that it was so separated. Apparently nothing was done under the contract to determine what wool belonged to the defendant. Taking the weights as the wool was manufactured did not enable the plaintiff to determine what portion of the contents of the bins was made at one time, and what at another.

The first request of the defendant was for a ruling that, on the evidence, the plaintiff could not recover on the first, second, or third count of its amended declaration. We think the jury were erroneously permitted to find for the plaintiff.

As additional facts may be presented at another trial, it becomes necessary to consider other questions in the case. The defendant contended that there was no sufficient memorandum of the contract, as required by the statute of frauds.* It is immaterial that the defendant's name appears in the body of the memorandum, instead of as a signature at the end of it, and that the name was written by the defendant's agent and broker, instead of by one of its officers. *Hawkins* v. *Chace*, 19 Pick. 502. *Coddington* v. *Goddard*, 16 Gray, 436. *Clason* v. *Bailey*, 14 Johns. 484. *Tourret* v. *Cripps*, 48 L. J. Ch. (N. S.) 567.

The quantity given in the statement of the goods to be manu-

---

* The memorandum, which was made by one Pratt, was as follows: "Mar 24/93. Bought of New Eng D M & W Co about 2000 to 2500 lbs F C and all they make for thirty days say up to 10,000 to 15,000 lbs at 40 cts. net cash 1% brokerage to me for % Standard Worsted Co."

factured is merely an estimate, or at most a limitation, and the language creates no uncertainty in regard to the manufactured goods. *Brawley* v. *United States,* 96 U. S. 168, 172. The most doubtful question arising on the memorandum is whether the words " about 2000 to 2500 lbs F C," taken in connection with the words following, "and all they make for thirty ,days," etc., is a sufficient designation of the property sold. The rule is that the goods sold must be designated in the writing, and cannot be shown by parol. *Waterman* v. *Meigs,* 4 Cush. 497. *May* v. *Ward,* 134 Mass. 127. *Pulse* v. *Miller,* 81 Ind. 190. *Holmes* v. *Evans,* 48 Miss. 247. *Eggleston* v. *Wagner,* 46 Mich. 610. But we have no doubt that the meaning of the letters " F C," which are technical abbreviations used in the wool trade, may be shown by parol, as well when they appear in a memorandum relied on under the statute of frauds as in any other writing.

While parol evidence is not competent to contradict or vary the terms of such a memorandum to show what is intended, we are of opinion that the situation of the parties and the surrounding circumstances at the time when the contract was made may be shown to apply the contract to the subject matter. Upon this point the decision in *Macdonald* v. *Longbottom,* 1 El. & El. 987, which was concurred in by all the judges sitting in the Exchequer Chamber, is an authority which fully covers the present case. · When it is shown who and where the· parties were at the time of making the contract, and what property the plaintiff had on hand of the kind described, it is clear, without more, that the memorandum referred to the 2,443 pounds of wool on hand recently manufactured, and to the additional amount which might be manufactured within the thirty days. See *Mead* v. *Parker,* 115 Mass. 413; *Hurley* v. *Brown,* 98 Mass. 545 ; *Scanlan* v. *Geddes,* 112 Mass. 15 ; *Slater* v. *Smith,* 117 Mass. 96 ; *Nichols* v. *Johnson,* 10 Conn. 192 ; *Waring* v. *Ayres,* 40 N. Y. 357 ; *Colerick* v. *Hooper,* 3 Ind. 316.

Moreover, upon the undisputed evidence, there was an acceptance of a part of the property, which takes the case out of the statute. There is no testimony that would warrant a finding that the wool which was delivered and paid for was received by the defendant in any other way than as delivered by the

plaintiff in part performance of his contract. See *Marsh* v. *Hyde*, 3 Gray, 331; *Gault* v. *Brown*, 48 N. H. 183; *Scott* v. *Eastern Counties Railway*, 12 M. & W. 33; *Van Woert* v. *Albany & Susquehanna Railroad*, 67 N. Y. 538.

We do not think there was evidence in the case which made it the duty of the presiding judge to give any of the other instructions requested by the defendant.*

---

* These requests, except the second, which appears in the opinion, were as follows:

" 1. On the evidence in the case, the plaintiff cannot recover on the first, second or third counts of its amended declaration. . . .

" 3. If the jury find that the title to the wool was to pass on payment of the price, and that the total price was to be fixed by weighing the wool actually made in the thirty days, and that it was the plaintiff's duty under the contract to do the weighing, the defendant was under no obligation to pay the price until the plaintiff had furnished it the information which would enable it to do so ; and until the price was so ascertained and paid, the title would not pass (if the jury find the intention of the parties to have been as above stated).

"4. If the jury find that it was the intention of the parties that the defendant was to pay for the wool before it acquired the title to the same, and that the total price was to be fixed by weighing the wool, and that under the contract it was the duty of the plaintiff to so weigh the wool, then before the plaintiff could call upon the defendant to pay for the wool, it must have furnished the defendant with the total price so ascertained by weighing, as above stated; and if the jury so find as above stated, then until the price was so furnished to the defendant it was not bound to pay for the wool or to accept it.

" 5. If the jury find that it was the duty of the plaintiff under the contract to weigh the wool, and furnish the defendant with the total price so fixed by such weighing, before the defendant was under any obligation to pay for the wool, then, if the plaintiff never did this within a reasonable time after the wool was ' made,' it cannot recover under any of the counts of its amended declaration.

" 6. If the jury find that it was the duty of the plaintiff to notify the defendant that the wool had been ' made,' and the amount of it, then the plaintiff was bound to give that notice within a reasonable time; if it never gave it, such being found to be its duty, it cannot maintain this action; if it did not give such notice until November 1, 1893, that was not a notice within a reasonable time after April 24.

" 7. If the jury find the contract to have been that the plaintiff had no right to ship the wool to any place outside its factory unless instructed so to do by the defendant, if the plaintiff shipped the wool to Lawrence without the instructions of the defendant and without its knowledge, and this shipment was before any breach by the defendant of its contract, then such

As the questions in regard to the admission of evidence will not be likely to arise again in the same form, we do not think it necessary to consider them.

*Exceptions sustained.*

---

shipment was a breach by the plaintiff of its contract which will prevent its recovering upon any of the counts of its amended declaration.

" 8. If such shipment to Lawrence was made after any failure of the defendant to keep its contract, and before such shipment there had been any breach by the defendant of its contract, then the liability of the defendant, if any there be under any of the counts, must be determined as of a date on or before April 29, 1893.

" 9. If the jury find the contract to have been such as is recited in the ' memorandum ' made by Pratt, and also find that only a portion of the wool was then ' made,' and that that portion was not actually examined by the vendee or any one representing it, then under such a contract and under such circumstances the defendant, the vendee, would not only be entitled to receive wool of the grade of ' F C,' but also it would be entitled to receive wool of the grade of ' F C ' which was in quality ' fairly merchantable ' as ' F C ' wool, and under such a contract and under such circumstances the defendant would be entitled to a reasonable opportunity to examine the wool tendered to it; and unless the exact quality of ' F C ' wool contracted for was so separated as to be a distinct mass or body by itself, the defendant was not only not given a reasonable opportunity to examine the wool, but it would not be obliged to make any examination or to accept the wool so tendered.

" 10. On all the evidence in the case the so called ' memorandum ' made by Pratt is not such a memorandum as satisfies the requirements of Pub. Sts. c. 78, § 5.

" 11. If the defendant accepted and paid for the 3,217 lbs. of wool which was sent to E. Frank Lewis [at Lawrence] on or about April 10, 1893, with no intention to perform the whole contract of March 24, and with no intention to assert ownership as to all the wool the subject of that contract, but, on the contrary, accepted such 3,217 lbs. and paid for it with an intention to assert ownership only as to that said 3,217 lbs., then as to the 5,014 lbs. shipped to Lawrence on April 29 there is on the evidence no such acceptance and receipt in the sense of Pub. Sts. c. 78, § 5, as satisfies the requirements of that section as to ' acceptance and receipt.' "