FRED GENDELMAN vs. JOSEPH MONGILLO ET UX.

Third Judicial District, New Haven, January Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The note or memorandum of sale required by the statute of frauds (§ 6130), must state the contract with such certainty that its essentials can be known from the memorandum itself without the aid of parol proof, or by a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it, and the parties to it, so as to furnish evidence of a complete agreement.

In the present case the memorandum recited that the signers (the defendants) had "Sold to Fred Gendelman [the plaintiff], house for $3,000. Give 2 months time from Nov. 21, 1919. 6 Washington Place. Cash $1,000, $50 every 6 months on a principal. Interest on mortgage 1 month time to straighten out. Received check of $100 deposit." In a suit for the specific performance of the agreement, the trial court sustained a demurrer to the complaint and the defendants appealed. Held:— .

1. That it was impossible from the memorandum to determine with any degree of certainty what the parties intended as to the method and terms of payment, and that for this reason the memorandum failed to meet the statutory requirements. (Two judges dissenting.)

2. That in omitting mention of any agreement to accept a mortgage of $1,200 on the property sold, or to assume an $800 mortgage then outstanding as part of the purchase price—which the complaint alleged were part of the oral contract—the memorandum had failed to express all the terms of the undertaking and therefore could not be specifically enforced.

Gendelman *v.* Mongillo.

3. That the identity of "6 Washington Place " with the premises sold, might be shown by parol evidence, since this could be accomplished without resorting to the oral negotiations of the parties, by simply proving the existence of such a Place in the town or city of the vendors' residence, and then showing that the vendors owned number six in that street or Place; and therefore that the land sold was described with sufficient certainty.

This court is not obliged to confine its decision of the case to the single ground of demurrer decided by the trial court, even though that ruling be approved, but may consider other grounds of demurrer not passed upon below.

Argued January 26th—decided August 4th, 1921.

SUIT for the specific performance of an agreement to sell certain real estate, brought to the Superior Court in New Haven County where a demurrer to the complaint was sustained, *Webb, J.*, and judgment rendered for the defendants, from which the plaintiff appealed. *No error.*

*Louis M. Rosenbluth,* for the appellant (plaintiff).

*William J. McKenna,* for the appellees (defendants).

WHEELER, C. J.   The plaintiff seeks in this action to secure the specific performance of a writing placed upon the back of a blank check as follows:—

"Sold to Fred Gendelman, house for $3,000.   Give 2 months time from Nov. 21, 1919.   6 Washington Place.   Cash $1,000, $50 every 6 months on a principal.
                                                "Joseph Mongillo
                                                "Erminia Mongillo
"Interest on mortgage 1 month time to straighten out.   Received check of $100 deposit.
"Witness                                        Mrs. Faticoni."

The defendants demurred to the complaint because: (1)   The action was prematurely instituted. (2)   The contract as evidenced by the writing was within the statute of frauds, in that (a) the writing

"does not reasonably and sufficiently describe with certainty, or otherwise identify, the real estate to be sold"; (b) the writing "does not comply with the requirements of the statute of frauds as hereinbefore set forth and otherwise."

In its decision sustaining the demurrer, the court said that parol evidence would no doubt be admissible to apply "6 Washington Place" to the subject of the transaction, and that possibly it could be shown that this writing was signed by the defendants in New Haven, and that they owned the premises, 6 Washington Place. But the court did not decide this point, nor ground one of the demurrer, but held that the terms of the writing were too uncertain to be enforced, in-that it was impossible from the memorandum to determine what the parties did intend as to the method or terms of payment of the purchase price.

Ground 2(b) is a general demurrer, but under the circumstances disclosed by this record, we think we ought not to eliminate this ground of demurrer, because general, but that it should be taken to raise every question which indicates that Exhibit A conflicts with the statute of frauds.

The decision of the trial court upon a single ground of demurrer does not confine our decision to that ground; and if we find the trial court in error, it is our duty to consider the other grounds of demurrer. Whether the memorandum is within the statute or not is determined by the application of our general rule: "The note or memorandum of sale, required by the statute, must state the contract with such certainty, that its essentials can be known from the memorandum itself, without the aid of parol proof, or by a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of

it and the parties to it, so as to furnish evidence of a complete agreement." *Nichols* v. *Johnson,* 10 Conn. 192, 198; *Shelinsky* v. *Foster,* 87 Conn. 90, 97, 87 Atl. 35. Chief Justice Shaw said, in *Atwood* v. *Cobb,* 33 Mass. (16 Pick.) 227, 231: "The general rule is, that parol evidence bearing upon the *terms* of the contract is not admissible, because, if they vary it, it is a weaker species of evidence, and cannot control it, and if they are to the same effect, they add no strength to it, are immaterial, and therefore inadmissible; and because, when parties have reduced the evidence of their contract to writing, it supersedes all the verbal negotiation which preceded it. But parol evidence of the situation and circumstances of the land or other subject-matter about which the contract treats, is admissible to explain and give effect to the terms of the contract." Chief Justice Kent, in *Bailey & Bogert* v. *Ogden,* 3 John. Rep. (N. Y.) 399, 419, expressed the view of the court thus: "It [the memorandum] must state the contract with reasonable certainty, so that the substance of it can be made to appear, and be understood from the writing itself, without having recourse to parol proof. This is the meaning . . . of the statute, and without which, the beneficial ends of it would be entirely defeated."

The plaintiff says in his brief that the memorandum is that the defendants sold to Fred Gendelman the house (No. 6 Washington Place) for $3,000, and gave him two months' time from November 21st, 1919, in which to close the deal, upon the following terms: $1,000 to be paid in cash, of which $100 was paid at the execution of the memorandum, and a mortgage given for the balance, upon the principal of which mortgage $50 is payable every six months, and the plaintiff is to have one month's time or grace to meet the interest on the mortgage as it accrues. Whether

this memorandum is susceptible of such an interpretation or not, we shall not stop to consider. In one particular, at least, the terms as agreed to are not stated in this memorandum, though it be capable of the interpretation placed upon it by the plaintiff.

The complaint alleges that the terms of this agreement were that $1,000 was to be paid in cash, a $1,200 mortgage taken on the property sold, and the $800 mortgage already upon the property assumed as part payment of the purchase price. There is nothing in the agreement as to the assumption of an $800 mortgage, or as to the giving of a $1,200 mortgage. These were terms of the agreement as made, which were concededly not made a part of the memorandum. A decree based upon the memorandum would not carry out the true agreement as made by these parties. The agreement of the memorandum does not express the entire terms of the agreement, and these must be supplemented from the negotiations by parol proof. Such an agreement cannot be enforced. In *Patterson* v. *Farmington Street Ry. Co.*, 76 Conn. 628, 641, 57 Atl. 853, we said: "It is apparent that the court cannot enforce specific performance of an agreement whose terms are indefinite and uncertain. . . . The terms of an agreement, of which the specific performance is asked, are facts essential to the plaintiff's cause of action, and must be alleged. It is incumbent on a plaintiff, seeking specific performance of an agreement, to state its terms and to prove them as stated." Kent, Chancellor, in *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. Rep. (N. Y.) 273, 282, applies the rule thus: "The plaintiffs have gone into parol proof of negotiations and conversations prior to, and at the time of, the date of the agreement, to remove the ambiguity on the face of it, as to the meaning of the *preference* which was to be given, and also to ascertain, with some convenient

certainty, the sense of the parties as to the terms of the purchase or lease. But I apprehend the rule to be too reasonable, and too well settled, to be now disturbed, that when an agreement is reduced to writing, all previous negotiations are resolved into the writing, as being the best evidence of the certainty of the agreement." The rule where the memorandum discloses, as does this, that there are other terms, which are not stated, is summarized in a note in 9 Amer. & Eng. Anno. Cases, 1062, 1063: "But where the memorandum of the contract discloses on its face that there are other terms which were agreed upon, and which are not stated in the note, it is insufficient to satisfy the statute of frauds, as it does not show the entire terms of sale. Under such circumstances there is no presumption that the sale was for cash. . . . Where a memorandum of a verbal contract of sale is defective because it does not contain the terms of the sale, such defect cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute was designed to prevent." *Riley* v. *Farnsworth*, 116 Mass. 223; *Stone* v. *Browning*, 68 N. Y. 598. The note to *Ebert* v. *Cullen*, 33 L. R. A. (N. S.) 85 (165 Mich. 75, 130 N. W. 185), states: "But it has been held that if the memorandum shows that the sale was upon credit, the terms of such credit must be stated." Authorities might be cited at great length supporting this proposition. In view of this conclusion, we shall not consider the other features in which defendants claim the terms of this agreement are defectively stated, except in one particular.

The third ground of demurrer is that the land conveyed is not described with sufficient certainty, since it omits the town, county or State where the property is situated. The land described is "6 Washington Place." Parol evidence is admissible to apply the

description given in the memorandum, if it be a definite description, to the premises conveyed, if this identification can be made with reasonable certainty. "It [the memorandum] should, however, contain a sufficient description to evidence a common intent of the parties to deal with respect to a particular piece of property as distinguished from other property." *Flegel* v. *Dowling*, 54 Or. 40, 46, 102 Pac. 178. If the description can be identified by proof of some extraneous fact, that may be done, although, if it be necessary to add a term to the description, that cannot be done. In making this identification we do not go to the oral negotiations, nor to oral proof of what the parties intended. To do this would add to the terms of the memorandum. What we do is to ascertain where 6 Washington Place is. We locate this street number in a given place by oral proof, and then we show by oral proof that the seller owned these premises. And then we draw the inference that the parties intended to convey the 6 Washington Place which the seller owned in this given place. The description given may be applied by oral proof, so as to ascertain the precise premises conveyed.

We have made this application in a number of cases. Thus, in *Nichols* v. *Johnson*, 10 Conn. 192, the description was: "Philo Baldwin's right in Donald Baldwin's estate." This description appeared in an auctioneer's memorandum, containing a considerable list of sales made to different persons from Donald Baldwin's estate. Parol evidence was admitted that this estate was in process of settlement in Newtown. The unlikelihood of there being another Donald Baldwin's estate, especially one having a like inventory, was too great to make the identification a thing of uncertainty. All that was necessary was to lay in evidence the probate records of this estate. A simi-

lar ruling was made in Ryder v. Loomis, 161 Mass. 161, 36 N. E. 836.

The description in Hodges v. Kowing, 58 Conn. 12, 20, 18 Atl. 979, was: "his place in Stratford, Conn., containing fifteen acres, more or less." We held that "his place" meant his homestead, and that there was only one place in Stratford occupied as a homestead by Mr. Hodges, hence we applied this description to this homestead. The claim was referred to by the court, but not passed upon, that since Hodges owned no other real estate in Stratford the description must be held to apply to it. The same claim has been passed upon by courts of other jurisdictions and sustained, and correctly so we think.

The description applied by oral proof in Hurley v. Brown, 98 Mass. 545, was "a house and lot . . . on Amity Street, Lynn." By parol proof it was shown that the seller owned only one house and lot on Amity Street, hence the inference that this description applied to that. Here was an identification by parol proof of the premises on Amity Street.

In Kilday v. Schancupp, 91 Conn. 29, 98 Atl. 335, the memorandum was dated at Derby, Conn., and contained merely the description, "38–40 Emmett Avenue 3 tenement house." We held that, in the absence of evidence to the contrary, the inference of fact followed that the premises referred to were located in Derby. This inference made, without resort to parol proof, and we had a complete description. The inference was rebuttable, and when rebutted we should have had left the description "38–40 Emmett Avenue." Whether that description could be identified or not we had no occasion to pass upon. A like ruling was made in Annan v. Merritt, 13 Conn. 478.

The description in McMahon v. Plumb, 88 Conn. 547, 92 Atl. 113, "Lot No. 1 in map of lots at Wal-

nut Beach and filed at the Town Clerk's office at Milford, Connecticut," we held might be applied by the aid of the map referred to; but, since the map was not in existence, the description by itself was within the statute of frauds. We restated our rule in the second appeal of this case in 90 Conn. 281, 285, 96 Atl. 958.

In *Shelinsky* v. *Foster*, 87 Conn. 90, 87 Atl. 35, the memorandum referred to a deed, and we permitted parol proof to identify the deed referred to in the memorandum. The same ruling was made in *Bayne* v. *Wiggins*, 139 U. S. 210, 11 Sup. Ct. 521. So the description in the auctioneer's memorandum was identified by reference to the printed advertisement of the sale previously made, in *McBrayer* v. *Cohen*, 92 Ky. 479, 18 S. W. 123.

In *Crotty* v. *Effler*, 60 W. Va. 258, 54 S. E. 345, parol proof was permitted to identify the land referred to in the description, "a piece of land sold to John Effler by the Welch Land Improvement Co. 5 acres more or less and that joins the Crotty land," by proof of what land had been sold to John Effler.

In *Atwood* v. *Cobb*, 33 Mass. (16 Pick.) 227, parol proof was permitted to identify the land referred to in the description, " 5 acres of land . . . with the shop and other erections . . . on it, which I own in Middleborough, on the road to Wareham, being the same which I bought of him," by proof of the land bought.

So the physical objects referred to in the description may be identified by parol proof, and when this is done the description is complete. For example: the identification of the Brasscastle Brook sufficiently applied the description in the memorandum which was the subject of the action in *Robeson and Maxwell* v. *Hornbaker and Barber*, 3 N. J. Eq. (2 Green) 60; *Price* v. *McKay*, 53 N. J. Eq. 588, 32 Atl. 130.

Perhaps it is unnecessary to refer to other cases, with one single exception, since those cited illustrate with sufficient fullness the way in which the description has been applied or identified. The premises referred to were in each of these instances sufficiently definite to identify the land by its own terms, or by reference to external standards in existence at the time of the making of the memorandum. The map, or paper, or deed referred to in the memorandum, may be used to make the identification, or the oral proof may identify the description when it is definite enough to be capable of certain identification. "The description is sufficiently definite whenever it is reasonably certain from the contract itself, or can be made certain through reference to record, contract, map or fact, by resort to extraneous evidence thereof, whether oral or written." *McMahon* v. *Plumb,* 88 Conn. 547, 552, 92 Atl. 113. Descriptions which are clearly within the statute are: your land; a piece of land; a piece of land in M; and a given number of acres. These cannot be identified without resort to the negotiations of sale, in order to complete the terms, and this cannot be done. "If an insufficient description is given, or there is no description, oral evidence is not admissible in aid of the memorandum, because the court will never receive such evidence both to describe the land, and then to apply the description." 25 R. C. L. pp. 649-653, §§ 282, 284, 285. "Parol testimony of a previous oral agreement, which is the only means of identification referred to in the memorandum, cannot be taken into consideration in order to complete it." *Whelan* v. *Sullivan,* 102 Mass. 204, 206.

A case which goes somewhat further in identifying the description by oral proof is *Mead* v. *Parker,* 115 Mass. 413. The description in the memorandum was "a house on Church Street." The memorandum

was dated "Boston." By the ordinary rule the house would be deemed to be on Church Street in Boston. But the seller owned no house on Church Street, Boston, but did own one on Church Street in Somerville, and the majority of the court held that this sufficiently identified the house in Somerville with that described in the memorandum. If the seller owned only one house on Church Street, and that in Somerville, the inference would follow that the Church Street of the memorandum was this Church Street. "6 Washington Place" is a better description than "a house on Church Street," and we think parol evidence might be admitted to identify this location.

In *Harrigan* v. *Dodge*, 200 Mass. 357, 86 N. E. 780, the court held, in a case where the description was "three houses belonging to the Frances Dodge estate in Danvers," that "the writings themselves being not certain on their face, and being open to the possibility of becoming wholly indefinite, it was necessary for the plaintiff to allege facts sufficient to state a case clearly, which called for specific performance, by setting out in substance that the three houses referred to in the writings were the only ones owned by the Dodge estate in the town." This point as to pleading was not made in *Mead* v. *Parker*, 115 Mass. 413, nor was it made in this case, and therefore we do not determine it.

There is no error.

In this opinion BEACH and BURPEE, Js., concurred.

GAGER, J. (dissenting in part). In the memorandum we find the place, 6 Washington Place; the price, $3,000; the time for performance, within two months from November 21st, 1919; the terms of payment, $1,000 cash, the balance $50 every six months, which

is to be secured by mortgage, with the provision of allowing a month in which to straighten out the interest on the mortgage.

I do not think that, as language is ordinarily understood in real estate transactions, there can be any question as to what the parties meant, and as to the sufficiency of this meaning to enable the court to render a decree with moral certainty that it is, in all essentials of such a transaction, what the parties intended and described.

It is claimed that the allegations in the complaint, that the premises are subject to a mortgage for $800, which it was agreed the plaintiff should assume as part payment of the purchase piece, entirely contradict and render uncertain the application of the contract to the terms of payment. I do not regard this as at all serious or embarrassing to the court. The object of the contract was to give a good title for $3,000, $1,000 down and the rest on a mortgage payable $50 every six months; of that there can be no question. Under the contract it was the duty of the vendors to transfer the property free of this mortgage; it would make no financial difference to the vendors, or to the vendee, whether a mortgage of $2,000 was given for a clear title and the $800 mortgage discharged by the vendors, or whether, instead of a $2,000 mortgage to the vendors, the $800 was assumed by the vendee and the other $1,200 given in a mortgage over and above the existing mortgage of $800. There was not a dollar's variance in the substance of the transaction, whichever way it was done; the only practical difference at all being that, if the plaintiff assumed the $800, it made it a trifle easier for the vendors by obviating the necessity of clearing up the $800 at the time of the conveyance. If the vendee is raising no objection to the assumption of the $800

mortgage by agreement with the vendors, and it does not appear that this agreement was not subsequent to the memorandum, the arrangement certainly does not violate the essential spirit of the written contract. I do not think, moreover, that the defendants themselves saw any difficulty in the terms of payment, and that their demurrer was really framed for the purpose of raising the question as to the identity of the real estate to be sold.

Courts of equity treat this matter of mortgages on land contracted to be sold, with great freedom. "While the seller cannot compel the purchaser to take an estate with a defective title, the purchaser may compel the vendor to give him the estate with such title as he has." 25 R. C. L. p. 275. In an action by the vendor for specific performance, the existence of mortgages to an amount less than the purchase price does not constitute a bar to the action, where the discharge of the mortgage can be provided by the decree to be procured out of the purchase price. 36 Cyc. 639. And in 36 Cyc. p. 745, it is said: "In a suit either by vendor or vendee, where the encumbrances can be discharged by mere payment thereof, and are not larger in amount than the purchase-money due, the court in its decree may direct the payment of a sufficient part of the purchase-money for the purpose to the holders of the encumbrances instead of to the vendor, even though said holders are not before the court; or the court may authorize the vendee to remove the lien on failure of the vendor to remove it, and to reimburse himself out of his deferred payments of the purchase-price." *Foor* v. *Mechanics Bank & Trust Co.*, 144 Ky. 682, 139 S. W. 840; Amer. & Eng. Anno. Cases, 1913A, 714, and note on page 718. In this note it is said: "To the rule that the existence of a lien on the property is a bar to an action for specific performance, there is an

important qualification. 'Where an incumbrance can be removed merely by the application of the purchase money, and the court is able to provide for the conveyance of a clear title to the vendee, the mere fact that incumbrances exist which the plaintiff (vendor) has not removed, or even is unable to remove without the application of the purchase money for that purpose, will not prevent a decree for a specific purformance.' [Citing *Guild* v. *Atchison, T. & S. F. R. Co.*, 57 Kan. 70, 45 Pac. 821; 33 L. R. A. 77.] As is held in the [*Foor*] case, the fact that there is a mortgage or other lien on the property is not a bar to the action if the lien can be discharged out of the purchase money." Citing numerous cases. In the same note it is said: "But the rule that the court can direct the application of the purchase money to the satisfaction of the liens has been applied even where specific performance was sought by the purchasers. *Grant* v. *Beronio*, 97 Cal. 496, 32 Pac. 556; . . . *Hunt* v. *Smith*, 139 Ill. 296, 28 N. E. 809." The foregoing is well-settled doctrine in New York. *Webster* v. *Kings County Trust Co.*, 145 N. Y. 275, 39 N. E. 964; *Pelletreau* v. *Brennan*, 113 N. Y. App. Div. 806, 99 N. Y. Supp. 955. See also *Ives* v. *Hazard*, 4 R. I. 14.

In the present case it is the vendee who is bringing the action. If—as is clear from the above cases—the vendee cannot be heard to complain where his contract was for a clear title, provided it was practicable for the court, by application of the purchase price, to clear off a mortgage, much less could the vendor complain, where the vendee is seeking to get the land, though incumbered with a mortgage; and it makes no difference whether the mortgage is mentioned in the contract or not; the court has full power to grant the remedy in such cases, provided only the purchase price equals or exceeds the incumbrances, and

by its decree it can substantially carry out the agreement of the parties. *Purcell* v. *Burns,* 39 Conn. 434; *Shelinsky* v. *Foster,* 87 Conn. 90, 87 Atl. 35.

The trial court was in error in sustaining the demurrer for this ground of ambiguity and indefiniteness with reference to the terms of the contract as relating to payments, and I cannot agree with the majority upon this part of the opinion, which is the basis of the decision.

In this opinion CURTIS J., concurred.